Richard W. SCHOON and Linda J. Bohnen, as executrix of the estate of William J. Bohnen, Plaintiffs,

v.

TROY CORPORATION, A Delaware corporation, Defendant.

C.A. No. 2362–VCL.

Court of Chancery of Delaware.

Submitted: Dec. 31, 2007.
Decided: March 28, 2008.

Kevin G. Abrams, Esquire, J. Travis Laster, Esquire, Matthew F. Davis, Esquire, Abrams & Laster, LLP, Wilmington, DE, for the Plaintiffs.

Cathy L. Reese, Esquire, Brian M. Rostocki, Esquire, Fish & Richardson P.C., Wilmington, DE; Michael J. Maimone, Esquire, Edwards Angell Palmer & Dodge, LLP, Wilmington, DE, for the Defendant.

## OPINION

LAMB, Vice Chancellor.

In this case, a former and a current director of a Delaware corporation together sue for advancement in connection with defending threatened and pending fiduciary duty based claims filed by the corporation. The corporation initially tried to interject these claims into an action pursuant to 8 *Del. C.* § 220 initiated by the current director; but, after this court denied that motion, the corporation brought the same claims in a separate action. The court concludes that, under the controlling bylaws, the former director is not entitled to advancement. The current director, however, is entitled to advancement for defending the threatened and pending fiduciary duty based claims. Moreover, since the corporation continued to investigate these claims in the section 220 action, even after unsuccessfully seeking to interject them in that action, the current director is entitled to advancement for defending these threatened claims.

## I.

A. *The Parties*

William J. Bohnen was a former director

of Troy Corporation.[1] Richard W. Schoon is a current director of Troy. In this action, Bohnen and Schoon sue Troy for advancement of legal fees and expenses incurred in connection with two lawsuits. These lawsuits included, albeit in different procedural postures, allegations that Bohnen and Schoon breached their fiduciary duties in connection with their service on the Troy board of directors.

Troy is a privately held Delaware corporation with its principal place of business in Florham Park, New Jersey. Troy develops and manufactures specialty chemicals. Troy has three classes of common stock and is governed by a board of five directors. The series A stockholders elect four Troy directors and the series B stockholders elect one director. The series C stock has no voting rights.

B. *The Facts*

Bohnen and his family are major Troy stockholders, primarily through an entity named Steel Investment Company. Steel, a privately held Delaware corporation, is an investment holding company owned and controlled by the Bohnen family. Steel owns 95% of Troy's series B common

stock, constituting 33% of Troy's total equity. The remaining 5% is owned directly by members of the Bohnen family. Steel acquired its interest in Troy in 1980 and has designated a Troy director, through its series B stock, since that time.

Bohnen served as Steel's director designee from 1998 until his resignation in February 2005.[2] At that time, Steel elected Schoon, a longtime financial consultant to Steel and the Bohnen family, to replace Bohnen on the Troy board of directors. Schoon's election became effective by written consent on February 28, 2005.

In January 2004, Steel decided to sell its stake in Troy. To that end, the Steel board authorized incentive payments to Bohnen and Schoon if they could effectuate a sale by December 2005.[3] Steel made a books and records demand in order to value its interest in Troy. Separately, Schoon also requested certain books and records. Schoon informed Troy that he was requesting the information in order to "fulfill [his] fiduciary duties as a director of Troy."[4] Unsatisfied with Troy's response, Schoon filed an action in this court, pursuant to 8 *Del. C.* § 220, on September 29, 2005.[5] Steel filed its own section 220 ac-

1. Bohnen passed away on November 6, 2006, and on May 1, 2007 this court granted the motion to substitute Linda J. Bohnen, in her capacity as the executrix of his estate in his stead.

2. Bohnen resigned due to health problems.

3. At a January 15, 2004 board meeting, the Steel board approved an incentive agreement whereby "[C]ommissions were authorized to be paid to William Bohnen of 2% of the sale proceeds not to exceed $1 million and 1% of the sale proceeds to Richard Schoon not to exceed $500,000 if they were successful in their efforts to have the stock of Troy Corporation owned by Steel sold on or before December 2005." Warren Aff. Ex. A.

4. Davis Aff. Ex. E.

5. *Schoon v. Troy Corp.*, Del. Ch., C.A. No. 1677–VCL. On November 3, 2005, Schoon filed a separate action asserting breach of fiduciary duty claims against Troy and its board of directors. *Schoon v. Smith*, Del. Ch., C.A. No. 1753–VCL. The defendants in that action moved to dismiss the complaint, and filed an opening brief on March 13, 2006. Schoon filed an amended complaint on April 17, 2006, dropping many of the claims originally asserted. Troy and the director defendants moved to dismiss Schoon's amended complaint on May 12, 2006. The court granted that motion to dismiss on September 6, 2006, holding that Schoon lacked standing to sue Troy. Schoon appealed to the Delaware Supreme Court on October 12, 2006, and the Supreme Court affirmed this court's decision on February 12, 2008. *See Schoon v. Smith*,

tion on November 7, 2005, after it could not agree on the terms of a confidentiality agreement with Troy.[6] The court consolidated these actions on November 9, 2005 (the "220 Action").

Troy filed its answer and affirmative defenses to the 220 Action on October 25, 2005. Those affirmative defenses include allegations that Schoon, in breach of his fiduciary duties, planned to share with Steel and other third-parties any documents he might receive from Troy pursuant to the 220 Action. No claims were made against Bohnen at this time.

### C. The Bylaw Amendment

On November 3, 2005, the Troy board, except for Schoon, approved several amendments to the Troy bylaws (the "November amendments").[7] In those amendments, Troy removed the word "former" from its definition of the directors entitled to advancement.[8] Troy also inserted the following provision purportedly limiting the right to advancement:

*Proceedings Initiated by Indemnified Persons.* Notwithstanding any provisions of this Article to the contrary, the Corporation shall not indemnify any person or make advance payments in re-

spect of Losses to any person pursuant to this Article in connection with any Proceeding (or portion thereof) initiated against the Corporation by such person unless such Proceeding (or portion thereof) is authorized by the Board of Directors or its designee; *provided, however,* that this prohibition shall not apply to a counterclaim, cross-claim or third-party claim brought in any Proceeding or to any claims provided for in Section 8 of this Article.[9]

### D. Troy Countersues

On January 23, 2006, Troy moved in the 220 Action for leave to file an amended and supplemented answer, verified counterclaims, and a third-party complaint. Troy's counterclaims and third-party complaint sought to assert breach of fiduciary duty claims against Schoon and Bohnen, among others. Similar to the affirmative defenses Troy asserted in its original answer, the basis for these fiduciary duty claims was that Schoon and Bohnen had in the past provided Troy's confidential information to Steel and other third parties.[10] After Troy filed this motion, the plaintiffs contacted Troy concerning their belief that they were entitled to advancement for de-

No. 554, 2008 WL 375826 (Del. Feb. 12, 2008).

**6.** *Steel Investment Co. v. Troy,* Del. Ch., C.A. No. 1764–VCL, 2005 WL 5783421.

**7.** For purposes of this motion, the plaintiffs assume "that the amendments were validly adopted." Pls.' Answering Br. 26 n. 6.

**8.** The relevant part of the prior bylaw read: "[T]he Corporation shall pay the expenses incurred by any present or former director. . . ." Following the amendment the provision reads: "Losses reasonably incurred by a director or officer in defending any threatened or pending Proceeding . . . shall be paid by the Corporation in advance of the final disposition . . ." Def.'s Supp. Tabs 5, 6.

**9.** *Id.* Tab 6 (emphasis in original).

**10.** Troy also brought third party-claims against James E. Bohnen, James L. Cummings, Peter J. Solomon Company Limited, Peter J. Solomon Company, L.P., and Peter J. Solomon Securities Company Limited. James Bohnen is William Bohnen's brother and the president and a director of Steel. Cummings is a Steel director and is married to a member of the Bohnen family. The allegations against these third parties are that they aided and abetted Schoon and Bohnen in breaching their fiduciary duties to Troy. The Solomon entities have been retained by Troy in the past to perform financial services. Davis Aff. Ex. J 40–41.

fending against the claims Troy sought to raise. On February 1, 2006, Schoon, in accordance with Troy's bylaws and certificate of incorporation, formally demanded advancement and made the requisite undertaking to repay all fees in the event he is unsuccessful.[11] On February 2, 2006, Bohnen made the same demand and undertaking.[12] Both letters directed Troy to contact its counsel, Abrams & Laster (A & L), immediately "to provide them with information regarding how Troy will comply with its advancement obligations...."[13] Troy did not respond to these letters. One week later, on February 9, 2006, this court denied Troy's motion on grounds that it would unduly delay trial of the 220 Action.[14]

Consequently, on February 27, 2006, Troy filed a plenary action (the "Troy Action") against eight defendants.[15] In this new complaint, Troy asserted the same claims it attempted to raise in the 220 Action. A & L entered its appearance in the Troy Action on the same day. A & L sent a letter to Troy on March 15, 2006 seeking payment on behalf of Schoon and Bohnen and enclosed several invoices for fees through approximately March 14, 2006. These invoices included legal fees and expenses in both the 220 Action and the Troy Action, and amounted to $233,958.61. Troy did not respond until May 22, 2006, when it notified Schoon and Bohnen that it had created a committee to review and consider the request.[16] On May 31, 2006, A & L sent Troy a second statement for $216,754, the legal fees and expenses incurred in both the 220 Action and the Troy Action by Schoon and Bohnen through May 26, 2006.

On July 31, 2006, the Troy advancement committee recommended to the board advancement of legal fees and expenses incurred by Schoon and Bohnen in opposing Troy's motion in the 220 Action. The committee also concluded that only one of the three invoices submitted by A & L in the March 15 letter was related to this matter and subject to advancement. This invoice amounted to $46,689.86. The advancement committee recommended reducing this amount by $6,832.50 to account for entries that it determined were not subject to advancement.[17] The committee also recommended reducing this sum by a further

11. *Id.* Ex. P.

12. *Id.* Ex. Q.

13. *Id.* Ex. P; Ex. Q.

14. This court stayed the consolidated 220 Action pending settlement negotiations between the parties. The parties were unable to resolve their dispute, but, by the time of trial, Schoon's complaint had become moot. This court allowed Steel to inspect the books and records of Troy subject to a confidentiality agreement. *Schoon v. Troy Corp.*, 2006 WL 2162036, at * 1 (Del.Ch. July 24, 2006). Currently pending are cross-motions for attorneys' fees in connection with the 220 Action.

15. *Troy v. Schoon*, Del. Ch., C.A. No. 1959–VCL. Troy named the eight parties it named in the 220 Action.

16. Davis Aff. Ex. S. The letter stated, in pertinent part: "(a) ... [O]n May 16, 2006, the Board of Directors of Troy ... created a committee to review and to consider the request for advancement, (b) that the committee will meet in the near future to review and to consider the request for advancement, (c) that, after the committee reviews and considers the request for advancement, the committee will make a recommendation to the Board, and (d) that, after the committee makes a recommendation to the Board, the Board will make a decision regarding advancement and will communicate the decision to Messrs. Schoon and Bohnen."

17. Troy contends that the advancement committee "reasonably concluded that certain expenses sought by [p]laintiffs were not actually incurred by [p]laintiffs at all." Def.'s Answering Br. 21.

60%, reasoning that the invoice reflected fees and expenses for three parties A & L represented in the Troy Action who were not entitled to advancement. Thus, the advancement committee recommended advancing on behalf of Schoon and Bohnen the amount of $14,025.17. The board adopted this recommendation.[18]

On August 13, 2006, A & L sent Troy a third statement, for $89,448.28, the legal fees and expenses incurred by Schoon and Bohnen through August 10, 2006. Before responding, Troy sought leave to amend its complaint in the Troy Action, which motion the court granted on August 22, 2006. The amended complaint added new claims, related to Troy's original allegations that Schoon, Bohnen, and the other Troy Action defendants had shared Troy's confidential information with third parties in breach of their fiduciary and contractual duties.[19] Schoon, Bohnen, and Steel filed their answer with affirmative defenses and counterclaims on September 7, 2006, and Troy filed its motion to dismiss the counterclaims on September 27, 2006. The Troy Action is still pending.[20]

Also on August 22, Schoon and Bohnen filed the current action, seeking advancement for the legal fees and expenses incurred in defending the breach of fiduciary duty claims Troy sought to raise in the 220 Action and actually raised in the Troy Action. On September 11, 2006, Troy's advancement committee answered A & L's August 13 request, concluding that only Schoon was entitled to advancement of the fees he incurred in defending the Troy

Action. Based on its review of A & L's invoices, the committee concluded this amount was $12,450. It then reduced that amount by 80% (to $2,490), reasoning that the invoice represented expenses and fees incurred by all five defendants A & L represented in the Troy Action, but that Schoon was the only defendant entitled to advancement.

## II.

Troy's bylaws, as amended on November 3, 2005, provide for mandatory advancement of all fees and expenses incurred in defending threatened or pending claims. The bylaws do not, however, provide for advancement of fees and expenses incurred in prosecuting an action. Nonetheless, in this action, Schoon and Bohnen seek advancement for fees and expenses incurred in both the Troy Action and the 220 Action.

The plaintiffs recognize that Troy's bylaws exclude advancement of costs incurred in prosecuting an action. However, the plaintiffs also note that the bylaws provide for advancement in defending against *threatened* litigation. According to the plaintiffs, they began defending against threatened litigation when Troy asserted counterclaims and moved to assert a third-party claim against Bohnen in the 220 Action. In addition, although Troy's motion for leave to file the amended counterclaims and third-party claims was denied in the 220 Action, and Troy ultimately had to file those claims separately, the plaintiffs argue that Troy nevertheless

---

**18.** Davis Aff. Ex. X.

**19.** For instance, Troy added a claim for tortious interference based on these allegations. Troy also dropped James Bohnen and James Cummings as defendants and added International Specialty Products, Inc. ("ISP"). ISP is a competitor of Troy that Troy believes was the recipient of its confidential information.

**20.** For purposes of this opinion, only this portion of the Troy Action is relevant. As an aside, Steel filed a derivative action on behalf of Troy on October 31, 2006. *Steel Investments v. Smith*, Del. Ch., C.A. No. 2511–VCL. Only a complaint and, recently, a motion to dismiss have been filed in that action.

investigated those claims in the context of the 220 Action in order to develop support for the fiduciary duty claims ultimately filed in the Troy Action. Therefore, the plaintiffs argue, they are entitled to advancement of fees and expenses incurred in the 220 Action to the extent they relate to defending against the fiduciary duty claims now pending in the Troy Action.

In response, Troy relies on three principal arguments. First, Troy argues that because Schoon initiated the 220 Action, and since Bohnen was never made a party to that action, any fees and expenses Schoon and Bohnen incurred in that action are not subject to advancement.[21] Troy further argues that "the fact that Troy sought to defend itself in the actions Schoon and Steel initiated does not change this prohibition."[22]

Second, Troy argues that it has "already advanced the fees and expenses submitted to which the [p]laintiffs may be entitled under Troy's advancement provisions."[23] According to Troy, the outstanding invoices represent fees incurred by Steel, not Schoon or Bohnen.[24] In support of this position, Troy cites to three of the A & L invoices that, according to Troy, establish that Schoon and Bohnen sought advancement of fees that were actually incurred by Steel in its part of the 220 Action.

Third, Troy argues that A & L represented numerous defendants in the Troy Action who were not entitled to advancement or indemnification under Troy's bylaws. According to Troy, when Schoon and Bohnen sought advancement of their expenses and fees, they submitted invoices that included expenses and fees incurred by these other individuals.

As to Troy's arguments regarding the invoices, the plaintiffs explain that Troy simply misapprehends the entries. The plaintiffs contend that A & L actually deducted from their advancement requests the expenses and fees incurred by Steel.

## III.

The parties have filed cross-motions for summary judgment, invoking Court of Chancery Rule 56(h). Since there is no dispute as to a material issue of fact, the court will treat the cross-motions as "the equivalent of a stipulation for decision on the merits based on the record submitted with the motions."[25] As a result, "the usual standard of drawing inferences in favor of the nonmoving party does not apply."[26]

The plaintiffs seek a determination as to their entitlement to advancement without the benefit of discovery.[27] According to the plaintiffs, the parties agreed that discovery would only be necessary if this court finds the plaintiffs are entitled to

21. Troy did conclude that Schoon and Bohnen were entitled to advancement of fees and expenses incurred in defeating Troy's motion for leave to file counterclaims and a third-party complaint. Def.'s Opening Br. 24.

22. *Id.* at 4

23. *Id.* at 3.

24. *Id.*

25. Ch. Ct. R. 56(h) ("Where the parties have filed cross-motions for summary judgment and have not presented argument to the Court

that there is an issue of fact material to the disposition of either motion, the Court shall deem the motions to be the equivalent of a stipulation for decision on the merits based on the record submitted with the motions."); *Am. Legacy Found. v. Lorillard Tobacco Co.,* 886 A.2d 1, 18 (Del.Ch.2005).

26. *Am. Legacy Found.,* 886 A.2d at 18.

27. Pls.' Answering Br. 15.

further advancement and a dispute arises concerning the reasonableness of the fees and expenses sought.[28]

## IV.

Section 145 of the Delaware Code permits Delaware corporations to indemnify directors. Subpart (e) of that provision authorizes advancement of the expenses a director incurs in defending a lawsuit so long as the director undertakes to "repay such amount if it shall ultimately be determined that such person is not entitled to be indemnified by the corporation...."[29] Significantly, "such expenses ... may be so paid upon such terms and conditions ... as the corporation deems appropriate."[30]

Given the flexibility inherent in section 145, this court will be guided by the terms of the controlling advancement provisions in Troy's bylaws. As noted, Troy made several amendments to its bylaws on November 3, 2005.[31] These amendments establish different advancement rights for Bohnen, as a former director, and Schoon as a current director.

### A. *Bohnen's Right To Advancement*

#### 1. *The November Amendments Control Bohnen's Right to Advancement*

■ Through the November amendments, Troy purported to remove former directors, including Bohnen, from the class of Troy officials entitled to advancement. Specifically, the pre-amendment bylaws provided that "the Corporation shall pay

the expenses incurred by any present or former director ...." Following the amendment, the successor provision read "[l]osses reasonably incurred by a director or officer in defending any threatened or pending Proceeding ... shall be paid by the Corporation in advance of the final disposition ..."[32] Troy cites this amendment as precluding Bohnen from receiving any further advancement. Indeed, Troy states that the purpose of this amendment was to "delete former directors from entitlement to advancement."[33] In response, Bohnen contends that, pursuant to *Salaman v. National Media Corp.*,[34] the November amendments do not terminate his right to advancement. According to Bohnen, his rights in the pre-amendment bylaws, which granted former directors the right to advancement, vested before the adoption of the November amendments.

In *Salaman*, the plaintiff was a former director who sought advancement for fees and expenses incurred in defending a claim that he breached his fiduciary duties in his capacity as a director. The defendant corporation, after advancing the plaintiff a portion of his fees, amended its bylaws to repeal the basis for the claimed right and then refused any further advancement.

Relying on the principle that "the right to advancement and indemnification is a vested contract right which cannot be unilaterally terminated,"[35] the court held that Salaman's contract rights, embodied in the pre-amendment bylaws, vested when the defendant's obligations were triggered, or the date of the filling of the pleading

28. *Id.*

29. 8 *Del. C.* § 145(e).

30. *Id.*

31. For purposes of this motion, the plaintiffs assume "that the amendments were validly adopted." Pls.' Answering Br. 26 n. 6.

32. Def.'s Supp. Tab 5; Tab 6.

33. Def.'s Answering Br. 5.

34. 1992 WL 808095 (Del.Super.Oct. 8, 1992).

35. *Id.* at *6.

against him. Therefore, the court concluded that the amendment did not affect Salaman's advancement rights with respect to that claim.

In this case, Bohnen argues that his right to advancement in the pre-amendment bylaws vested when he took office and Troy cannot terminate this right without his consent. In support of this position, Bohnen contends that in *Salaman* "[t]he court decisively rejected the company's argument that it could amend the bylaws to deny Salaman his preexisting right to mandatory advancement, holding that the company could not 'unilaterally rescind a vested contract right upon which Salaman relied.' "[36] This selective reading, however, fails to acknowledge that the court only upheld Salaman's right to advancement because he was named as a defendant before the bylaw was amended. The *Salaman* court found that the lawsuit triggered the director's right to advancement and precluded the defendant from enforcing the amendment against him. That ruling undermines Bohnen's contention that a director's rights under a company's bylaws vest at the time the director takes office and cannot be unilaterally changed.

Here, Troy raised affirmative defenses alleging breaches of fiduciary duties in the 220 Action before the November amendments, but Bohnen was not named in the affirmative defenses and was not a party to the 220 Action. Perhaps more importantly, at the time of the bylaw amendment, Troy had not even conducted the

discovery that it later relied on to assert the fiduciary duty claims against Bohnen. Thus, there is no evidence that Troy was even contemplating claims against Bohnen at the time of the amendments. Therefore, the court concludes that, unlike *Salaman*, Bohnen's rights under the pre-amendment bylaws had not been triggered before the November amendments.[37]

### 2. *Troy's Bylaws Eliminate Bohnen's Right To Advancement*

■ Bohnen next asserts that the November amendments, if effective, fail to terminate his right to advancement. First, Bohnen argues that regardless of the deletion of the word "former" in section 9, subsequent language in the same article of the bylaws expressly provides for his right, as a former director, to advancement. The language found in section 12 reads:

> The rights conferred by this Article shall continue as to a person who has ceased to be a director or officer and shall inure to the benefit of such person and the heirs, executors, administrators and other comparable legal representatives of such person.[38]

■ "It is an elementary canon of contract construction that the intent of the parties must be ascertained from the language of the contract."[39] Section 12 is entitled "Non-exclusivity and Survival of Indemnification," and the language Bohnen relies on is placed between standard contract language routinely inserted, often word-for-word, to clarify the terms of the relevant provision.[40] The standard form of

---

36. Pls.' Answering Br. 25 (quoting *Salaman*, 1992 WL 808095, at *6).

37. Significantly, the Troy bylaws permit the board of directors, at any regular or special meeting, "to alter or repeal any bylaws of the Corporation and to make new bylaws...." Def.'s Supp. Tab. 6.

38. *Id.*

39. *Citadel Holding Corp. v. Roven*, 603 A.2d 818, 822 (Del.1992).

40. The language preceding the provision Bohnen cites reads: "The provisions of this Article shall not be deemed to preclude the indemnification of any person who is not specified in Section 1, 2 or 3 of this Article but whom the Corporation has the power to indemnify (and pursuant to Section 4 of this

this language and its position as a concluding section in the article indicates that this language does not preserve a former director's right to advancement in the face of the November amendments. Rather, it is better understood as providing that a director, whose right to advancement is triggered while in office, does not lose that right by ceasing to serve as a director. However, Bohnen resigned before Troy initiated its fiduciary duty claims against him. Therefore, Bohnen is not entitled to advancement.

This conclusion is consistent with *Weinstock v. Lazard Debt Recovery GP*,[41] which Bohnen also relies upon. The *Weinstock* court concluded that former directors had the right to advancement under an LLC agreement that did not expressly provide for advancement to former directors. The court held that, because the LLC agreement extended indemnification to former directors, the advancement provision should also be read as including former directors. This reading was based on the nature of the advancement provision in the framework of the indemnification provision in the LLC agreement.[42] Specifically, the court reached this conclusion, in part, because the relevant section "addresse[d] indemnification broadly and treat[ed] the right to receive payments of expenses in advance as a subsidiary component."[43]

The *Weinstock* court found that the intent of the drafters was to extend the right to advancement to former directors because of the interrelated nature of the indemnification and advancement provisions. For example, the court noted "the final sentence of § 2.06(a), which addresses advancement, clearly refers back to the first sentence of that subsection, which deals with ultimate indemnification."[44]

While Troy's bylaws do indemnify former directors, the clear separation of the indemnification and advancement provi-

---

Article determines to indemnify) or an obligation to indemnify under the provisions of Delaware Law, or otherwise." *Id.*

41. 2003 WL 21843254 at *5 (Del.Ch. Aug. 8, 2003) (finding similar language to mean "that departure from current service did not deprive an Indemnified Party facing a covered proceeding from *any* of the rights set forth in § 2.06, including the right to advancement in the last sentence of § 2.06(a)....").

42. In *Weinstock*, the controlling provision in the LLC agreement stated, in pertinent part: "(a) Each Indemnified Party shall, in accordance with this Section 2.06, be indemnified and held harmless by the Company from ... any and all claims, demands, actions, suits or proceedings (whether civil, criminal, administrative or investigative), actual or threatened, in which such Indemnified Party may be involved, as a party or otherwise, by reason of such person's service to or on behalf of, or management of the affairs of, the Company ... whether or not the Indemnified Party continues to be such at the time any such Indemnification Obligation is paid or incurred.... Expenses (including legal and other professional fees and disbursements) in-

curred in any proceeding will be paid by the Company in advance of the final disposition of such proceeding upon receipt of an undertaking by or on behalf of such Indemnified Party to repay such amount if it shall ultimately be determined that such Indemnified Party is not entitled to be indemnified by the Company as authorized hereunder. (b) The indemnification provided by this Section 2.06 shall not be deemed to be exclusive of any other rights to which each Indemnified Party may be entitled under any agreement, or as a matter of law, or otherwise, both as to action in such Indemnified Party's official capacity and to action in another capacity, and shall continue as to such Indemnified Party who has ceased to have an official capacity for acts or omissions during such official capacity or otherwise when acting at the request of the Managing Member and shall inure to the benefit of the heirs, successors and administrators of such Indemnified Party." *Id.* at *3.

43. *Id.* at *4.

44. *Id.*

sions precludes the interpretation reached by the court in *Weinstock*. Most importantly, section 9, the controlling advancement provision, is not a subpart of the indemnification provision. In addition, the bylaws do not contain the same extensive cross-references that supported the court's conclusion in *Weinstock*. "This court has consistently held that advancement and indemnification, although obviously related, are 'distinct types of legal rights.'"[45] In short, the language of the bylaws deliberately and unambiguously provides for unequal treatment of current and former directors in receiving advancement.

Finally, Bohnen argues that Troy conceded that the right of a former director to advancement was ambiguous under the bylaws. Therefore, Bohnen argues, the ambiguity should be construed against Troy, entitling him to advancement. Troy did state that "Bohnen's entitlement to advancement of fees in opposing Troy's motion to amend was less clear" than Schoon's entitlement to advancement in connection with that motion.[46] Additionally, Troy stated, in discussing Bohnen's right to advancement for Troy's motion to amend, that section 7 "introduces some ambiguity into the analysis" because section 7 "applies to 'Indemnified Persons,' including former directors. . . ."[47] Section 7, limits advancement as follows:

> *Proceedings Initiated by Indemnified Persons.* Notwithstanding any provisions of this Article to the contrary, the Corporation shall not indemnify any person or make advance payments in respect of Losses to any person pursuant to this Article in connection with any Proceeding (or portion thereof) initiated against the Corporation by such person unless such Proceeding (or portion thereof) is authorized by the Board of Directors or its designee; *provided, however,* that this prohibition shall not apply to a counterclaim, cross-claim or third-party claim brought in any Proceeding or to any claims provided for in Section 8 of this Article.[48]

Troy's concession is of little help to Bohnen. These statements merely acknowledge Troy's subjective uncertainty regarding whether Bohnen was entitled to advancement under section 7 because of the use of the phrase "Indemnified Persons." This arguably creates an ambiguity concerning a former director's right to advancement under section 7; however, it has no bearing on this action given Troy's decision to advance Bohnen his expenses in connection with its motion to amend filed in the 220 Action.[49] Bohnen misconstrues Troy's statements to mean that his right to advancement in connection with a proceeding outside section 7 is also ambiguous. As discussed above, section 9 clearly does not extend advancement to former directors outside section 7. Thus, Bohnen is not entitled to further advancement.

### B. *Schoon's Right To Advancement*

■ With respect to Schoon, the November amendments, as will be discussed below, did not impair his right to advance-

---

**45.** *Senior Tour Players 207 Mgmt. Co. LLC v. Golftown 207 Holding Co.*, 853 A.2d 124, 128 (Del.Ch.2004)(quoting *Nakahara v. NS*, 739 A.2d 770, 779 (Del.Ch.1998)).

**46.** Def.'s Opening Br. 24.

**47.** *Id.* at 24–25.

**48.** Def.'s Supp. Tab 6 (emphasis in original).

**49.** In light of Troy's position on the possible ambiguity, Bohnen is entitled to advancement for the fees and expenses he incurred in defending Troy's motion to amend in the 220 Action. To the extent that Bohnen did not receive all of these expenses, A & L, as will be discussed below, should include these fees in the affidavit it submits to this court.

ment in this action and, thus, do not require examination. In light of this conclusion, Schoon is subject to the November amendments. Foremost, section 9 states:

*Expenses Payable in Advance.* Losses reasonably incurred by a director or officer in defending any threatened or pending Proceeding ... shall be paid by the Corporation in advance of the final disposition of such Proceeding upon receipt of an undertaking by or on behalf of such director or officer to repay such amount if it shall ultimately be determined that such person is not entitled to be indemnified by the Corporation as authorized in this Article.[50]

"Proceeding" is defined as any "action, suit or proceeding, whether civil, criminal, administrative or investigative...."[51] Importantly, section 11 dictates that the "[c]orporation shall have the burden of proving that the indemnitee was not entitled to the requested ... advancement of expenses."[52]

This court must first note that the word "shall" in section 9 establishes a right to mandatory advancement.[53] Therefore, Troy must advance "reasonable" expenses so long as the right is not limited by other terms in the bylaws.[54] In an attempt to limit Schoon's right to advancement, Troy relies on the aforementioned amendment embodied in section 7 that prohibits advancement "in connection with any Proceeding ... initiated against the Corporation ... *provided, however,* that this prohibition shall not apply to a coun-

terclaim, cross-claim or third-party claim brought in any Proceeding."[55]

While this provision preserves Schoon's right to advancement in defending Troy's motion to amend in the 220 Action, it does not readily dispose of whether Schoon is entitled to advancement for the fees and expenses incurred after the denial of Troy's motion. Schoon contends that despite this court's denial of Troy's motion, Troy continued to investigate and pursue the fiduciary duty claims in the 220 Action to support the claims it ultimately filed in the Troy Action. Thus, Schoon argues, the fiduciary duty claims were threatened at the time Troy filed its motion in the 220 Action on January 23 and Schoon defended those threatened claims in the context of the 220 Action.

In response, Troy contends that section 7 clearly precludes advancement for these expenses because they were incurred "in connection with" a proceeding brought by Schoon. Specifically, Troy understands Schoon's argument to mean that "Troy's attempt to introduce counterclaims and third-party claims permanently transformed the 220 Action into a defensive action.... This appears to be the case because [A & L has] submitted invoices and demanded advancement of fees for nearly all activities in the 220 Action subsequent to the filing of Troy's [m]otion to [a]mend and its denial...."[56]

Schoon, however, is not arguing that Troy's motion transformed the 220 Action into a proceeding subject to advancement.

---

50. Def.'s Supp. Tab 6.

51. *Id.*

52. *Id.*

53. *See Citadel,* 603 A.2d at 823 ("The Agreement, on the other hand, renders the corporation's duty mandatory in providing that expenses *shall* be paid in advance. Under the

Agreement, Citadel is required to advance to Roven the costs of defending suits, rather than merely permitting it to make such advances as provided in the statute.").

54. *See id.*

55. Def.'s Supp. Tab 6 (emphasis in original).

56. Def.'s Opening Br. 28–29.

Rather, Schoon contends that following the denial of Troy's motion to amend, Troy continued to pursue the fiduciary duty claims in the 220 Action to support the claims it intended to raise in the Troy Action. This is evidenced by Schoon's decision not to seek fees defending Troy's affirmative defenses in the 220 Action before the motion to amend.[57]

Following Troy's unsuccessful motion, the fiduciary duty claims were unquestionably threatened. Troy exhibited its clear intention to raise the fiduciary duty claims against Schoon by naming him in the counterclaim. Despite this court's denial of that motion, Troy continued to investigate these claims in the 220 Action. Indeed, Troy questioned Schoon extensively at his deposition regarding the alleged breaches of fiduciary duty that formed the basis of the claims it eventually raised against Schoon in the Troy Action.[58] Troy also deposed several third parties, questioning them at length concerning their receipt and sharing of Troy's information and Schoon's involvement.[59] The focus of Troy's pre-trial briefing, trial questioning, post-trial submissions, and post-trial argument in the 220 Action also focused on the allegations that Schoon breached his fiduciary duties.[60] While this information was critical to Troy's affirmative defenses in the 220 Action, Troy chose to use the facts garnered from this investigation to file independent breach of fiduciary duty claims against Schoon in the Troy Action. This

removed fees and expenses from the limitations in section 7, making them properly subject to advancement as fees and expenses incurred defending a threatened proceeding.

It is important to note Schoon's fees and expenses in defending the affirmative defenses, for which he does not seek advancement, overlap with the costs he seeks for defending the threatened Troy Action. While this leads to an unusual set of circumstances, Schoon is still entitled to advancement for defending the threatened claims Troy eventually raised in the Troy Action.[61] Accordingly, if Schoon is unsuccessful in defending the fiduciary duty claims in the Troy Action, he will be forced to repay all of the expenses for which he now seeks advancement in connection with the 220 Action. Thus, any possibility that Schoon will enjoy the benefit of advancement without the attendant obligation to repay Troy in the event he is ultimately not entitled to indemnification is eliminated.

### C. *The A & L Invoices*

On the current motions, the parties only seek a determination of the "legal entitlement to advancement of fees and expenses" of Schoon and Bohnen in connection with the 220 Action and the Troy Action. However, in addition to the conclusions reached above, it is necessary to

---

**57.** This is not the "end-run around the 'defense' restriction" in Troy's bylaws that Troy describes and this conclusion does not require an overly broad reading of the term "defending." Def.'s Opening Br. 29. As discussed, this conclusion does not find that Troy is entitled to the fees and expenses incurred defending Troy's affirmative defenses, only the fees and expenses incurred in defending the threatened fiduciary duty claims that Troy ultimately raised in the Troy Action.

**58.** Pls.' Opening Br. 23–24.

**59.** *Id.* at 24; *See also* Davis Aff. Exs. CC, DD, MM.

**60.** Pls.' Opening Br. 25–26.

**61.** For the sake of completeness, it is also worth noting, as both parties agree, that Schoon is unquestionably entitled to advancement of the fees and expenses incurred in defending the Troy Action.

provide additional direction to the parties concerning the A & L invoices.

While the plaintiffs seek, in their complaint, an order requiring Troy to advance $526,135.62, this amount will be reduced to reflect the court's ruling that Bohnen is not entitled to advancement. To date, the plaintiffs' counsel have submitted nine invoices for advancement. A & L included three separate invoices in each of the letters sent on March 15, May 31, and August 13. The invoices represented three client-matter numbers, 134.00, 136.00, and 136.01. According to Troy:

> Schoon's fees and expenses for defending the Breach of Fiduciary Duty Claims in the Section 220 Action appear under client-matter 136.00. Bohnen's fees and expenses for defending the Breach of Fiduciary Duty Claims in the Section 220 Action appear under client-matter 134.00. Schoon and Bohnen's fees and expenses for defending the [Troy Action] appear under client matter 136.01.[62]

Based on the denial of Bohnen's right to advancement, none of the invoices under client matter 134.00 are subject to advancement. In addition, for the same reason, only half of the expenses incurred in client matter number 136.01 are subject to advancement.[63]

With respect to the invoices for client matter 136.00, Troy pro-rated these invoices to account for parties that A & L represented, but were not subject to advancement. This improperly ignored A & L's limitation of the invoice to the defense of Schoon. While it is not entirely clear, A & L appears to have separated from client matter 136.00 the costs associated with these other defendants. To reduce uncertainty, the court directs A & L to submit a good faith estimate of expenses incurred to date, consistent with this court's ruling.[64] This will require the plaintiffs' counsel to submit "a sworn affidavit certifying their good faith, informed belief that the identified litigation expenses relate solely to" the activities properly subject to advancement.[65] Going forward, only Schoon will be entitled to advancement for defending Counts I and VIII in the Troy Action, which are the only claims Troy raised against him.[66]

### D. *Prejudgment Interest*

"In Delaware, prejudgment interest is awarded as a matter of right."[67] A party seeking advancement is entitled to interest from the date on which the party "specified the amount of reimbursement demanded *and* produced his written promise to pay."[68] However, the court will not award prejudgment interest where the

---

62. Pls.' Answering Br. 17.

63. *Cf. Levy v. HLI Operating Company, Inc.,* 924 A.2d 210, 227 n. 62 (Del.Ch.2007) ("In the past, this court has held purported co-indemnitees who retained joint counsel responsible for their pro rata share of advanced fees and litigation costs. This bright-line rule comports with general notions of equity and prevents the court from having to engage in a time-consuming supplemental hearing to precisely allocate expenses amongst the individuals by examining attorneys' time sheets.").

64. *Cf. Fasciana,* 829 A.2d at 177 ("To implement this ruling, Fasciana shall submit a good

faith estimate of expenses incurred to date to address the precise allegations that trigger Fasciana's advancement right.").

65. *See id.*

66. As this court has previously held, a plaintiff seeking advancement is only entitled to the portion of the case against him that is entitled to advancement. *See id.* at 175.

67. *Citadel,* 603 A.2d at 826.

68. *Id.*

party seeking advancement "deprived [the company] of the fair chance to make prompt payment required to avoid a later imposition of prejudgment interest."[69]

On February 1, 2006, after Troy's January 23 motion for leave to file counterclaims and a third-party complaint in the 220 Action, Schoon sent Troy a letter seeking advancement, making an undertaking to pay, and requesting that Troy "contact counsel [for Schoon and Bohnen] immediately to provide them with information regarding how Troy will comply with its advancement obligations with respect to this matter." The letter did not specify the amount of advancement requested. On February 2, 2006, Bohnen sent to Troy an almost identical letter. Troy did not respond to either letter.

On March 15, 2006, A & L submitted to Troy's Secretary its first invoice outlining the specific amount Schoon sought advanced. On April 13, 2006, the Troy board noticed a meeting for May 4, 2006, during which the agenda included addressing the plaintiffs' demands. At the May 4, 2006 meeting, Schoon refused to recuse himself from the discussion regarding advancement. Troy argues that the Troy board was therefore forced to recess. The Troy board reconvened, resolving at a May 16, 2006 meeting attended, by Schoon, to form a committee to consider the advancement requests. Troy made its first partial advancement payment May 22, 2006, over three and a half months after Troy received the initial demands, and two months after A & L's invoices.

█ Schoon contends that his February letter was sufficient to trigger prejudgment interest because in the letters he made an undertaking and requested Troy to direct him where to send his invoices.

He argues that the only reason A & L did not send the invoices to Troy before March 15, 2006 was because Troy never responded to the request for information. In support, Schoon cites *Citrin v. International Airport Centers LLC*.[70] Troy responds that Schoon is due no prejudgment interest at all.

First, Troy argues that this case is distinguishable from *Citrin* because Troy's bylaws indicate where those seeking advancement should send their invoices. Second, Troy argues that Schoon is not entitled to prejudgment interest because, even after March 15, 2006, any delay in Troy's making advancement is attributable to Schoon. Specifically, Troy points out that A & L submitted confusing invoices, causing Troy's delay in making advancement, and that, solely because Schoon refused to recuse himself, the board had to adjourn its first meeting to consider advancement without resolving anything. Troy argues that it promptly made payment at its first opportunity, and should not now have to pay prejudgment interest.

█ Although Schoon did not take the actions triggering prejudgment interest until March 15, 2006, Troy's dilatory response to that request was purely the result of its own inaction. Therefore, Schoon is entitled to prejudgment interest beginning March 15, 2006.

As an initial matter, the February letter from Schoon was insufficient to trigger prejudgment interest because neither letter specified the amount each individual sought advanced. Rather, the letters merely asked Troy where to send such invoices. However, Article VIII, Section 10 of Troy's bylaws clearly states that requests for advancement must be made to

---

**69.** *Citrin v. Int'l Airport Centers LLC,* 922 A.2d 1164, 1168 (Del.Ch.2006).

**70.** 922 A.2d at 1168.

the Secretary of the Corporation. This case, then, is distinguishable from *Citrin*, where the party seeking advancement had no way to determine where to send invoices. When asked, the company never responded. The *Citrin* court awarded prejudgment interest from the date of the first request where to send invoices, not the day the invoices were actually sent, because the company could not fairly claim that the party's actions deprived it of a fair chance to make prompt payment. Here, because Schoon could easily have discovered where to send the invoices, Troy's silence did not prevent Schoon from making proper submissions.

A & L's March 15, 2006 invoice, in conjunction with Schoon's undertakings in the February 1 letter, however, sufficiently gave Troy a fair chance to make prompt payment. Although A & L's invoices are less than models of perfect clarity, they are far from indecipherable. Indeed, Troy's board was eventually able to distinguish what it believed were the costs attributable to Schoon and Bohnen, and those costs attributable to other individuals or companies. Moreover, Schoon's presence at the May 4, 2006 Troy board meeting does not excuse Troy's inaction. There is no explanation for why the board was able to act at the May 16, 2006 meeting—which Schoon admittedly attended—but not at the May 4, 2006 meeting. Further, the court recognizes that, for purely administrative reasons, May 4, 2006 or May 16, 2006 may have been the earliest

date on which Troy could approve the March 15, 2006 advancement request. Thus, "[a]rguably ... pre-judgment interest should not run for some reasonable period during which the responding entity could review the invoices and process payments, say thirty days, and not from the very day payment demands are initially made."[71] However, the court in *Citrin* observed that "advancement suits do not arise from situations when responding entities are processing requests for advancement in a commercially timely manner."[72] In order to provide what "might be seen as ... a healthy incentive for responding entities not to deny advancement in cases when they have clearly promised it," the *Citrin* court adhered to the "slightly more generous approach to starting the prejudgment interest clock" the date payment demands were made, not when the company could administratively make payment.[73]

Finally, the conclusion does not change simply because Troy did not believe Schoon was entitled to advancement for costs incurred in the 220 Action. That Troy wrongfully decided Schoon's right to advancement does not mean Troy lacked a fair chance to make payment. Schoon is entitled to prejudgment interest set at the legal rate[74] beginning the date he both made an undertaking to repay and demanded reimbursement of a specific amount. Therefore, prejudgment interest runs from March 15, 2006 for amounts demanded in the March 15 invoice, from

---

71. *Id.* at 1168 n. 15.

72. *Id.*

73. *Id.*

74. *See Henke v. Trilithic, Inc.*, 2005 WL 2899677, at \*13 (Del.Ch. Oct. 28, 2005) (stating that "[w]hen neither party has carried its burden with respect to a component of the rate of interest, this Court normally uses the legal rate of interest"); *Boyer v. Wilmington*

*Materials, Inc.*, 754 A.2d 881, 909 (Del.Ch. 1999) (noting that even though this court "has broad discretion, subject to principles of fairness, in fixing the [interest] rate to be applied," generally, "the legal rate of interest has been used as the benchmark for prejudgment interest," and finding "no reason why the legal rate of interest should not be applied" "[b]ased on the record before [the court]").

May 31, 2006 for amounts demanded in the May 31 invoice, and from August 13, 2006 for amounts demanded in the August 13, 2006 invoice.

### E. *The Levy Decision*

 During the parties' briefing of this issue, Schoon and Bohnen revealed that Steel had advanced them costs incurred in the 220 Action, the Troy Action, and this action. Steel evidently has no legal obligation to pay these costs and can cease advancing them at its will.[75] Further, Schoon and Bohnen have agreed to repay Steel any amounts they receive as advancement or indemnification from Troy.[76] These facts prompted the court to request that the parties submit supplemental briefing on the impact of *Levy v. HLI Operating Company, Inc.*[77] As explained more fully below, *Levy* is a recently issued opinion of this court analyzing whether a director has standing to seek advancement under one agreement while receiving advancement pursuant to another. The court now concludes that *Levy* does not preclude Schoon's prosecution of this action.

The plaintiffs in *Levy* were six former directors of HLI Operating Company ("Old Hayes"), who were named as defendants in multiple securities lawsuits relating to restatements of Old Hayes's financial results. Four of the directors were designees of JLL Fund, a 34% holder of Old Hayes stock (the "JLL Representatives"). Old Hayes ultimately filed for Chapter 11 bankruptcy and, pursuant to the plan of reorganization, emerged as an operating subsidiary of the newly-created company, Hayes Lemmerz International, Inc. ("New Hayes").

In 2005, the *Levy* plaintiffs agreed to pay $1.2 million each to settle certain of the securities lawsuits. In connection with these payments, the plaintiffs sought indemnification from both Old Hayes and New Hayes pursuant to their indemnification rights under the Old Hayes bylaws, their personal indemnification agreements with Old Hayes, and their rights under the bankruptcy reorganization plan. Both Old Hayes and New Hayes rejected the plaintiffs' requests for indemnification. In response, the plaintiffs filed suit.

Although the *Levy* plaintiffs alleged in the amended complaint that they personally paid the settlement amounts, discovery revealed that JLL Fund had paid the settlement payments for the JLL Representatives pursuant to indemnification obligations found in separate agreements. Old Hayes moved for summary judgment against the JLL Representatives, seeking an order declaring it was not required to indemnify those individuals for the settlement payments JLL Fund made on their behalf. Old Hayes argued that the JLL Representatives had suffered no injury and therefore lacked standing to bring an indemnification claim.

The court agreed with Old Hayes, and held that "once a co-indemnitor fully reimburses its indemnitee for indemnifiable liabilities, the indemnitee lacks standing to assert an indemnification claim against the other indemnitor in the indemnitee's own right."[78] The court further held that the indemnitor who fully satisfied its obligation to its indemnitee must then sue the co-indemnitor in its own name on a theory of contribution.[79]

---

75. *See* Davis Aff. Ex. HHH.

76. *See id.*

77. 924 A.2d 210.

78. *Levy,* 924 A.2d at 222.

79. *Id.*

Troy argues that under *Levy*, Schoon lacks standing to bring this action because he has not suffered an actual loss. Troy further argues that Steel has no claim for contribution against Troy because Steel is voluntarily advancing Schoon's costs, and a claim of contribution exists only between co-indemnitors. In essence, Troy takes the extreme position that, even if it has an obligation to advance Schoon's costs under its bylaws, neither Schoon nor Steel can sue to enforce Troy's performance of that obligation given Steel's voluntary advancement of Schoon's costs. Schoon argues that it is precisely the voluntary nature of Steel's advancement that gives him standing to sue Troy. Specifically, Schoon argues that Steel could cease advancing his costs at any time, and therefore he faces sufficient loss to confer standing.

Although this case appears strongly similar to *Levy* at first glance, it is distinguishable from *Levy* in one important way: as both parties concede, unlike JLL Fund, Steel is not obligated to advance Schoon his costs. Rather, Steel has provided what is essentially a gift, voluntarily undertaking to pay the fees and expenses of Schoon, without any obligation to continue doing so in the future. For two reasons, this singular fact establishes that Schoon has standing.

First, this is not a case, as in *Levy*, in which Schoon "has not and will not sustain any actual out-of-pocket loss."[80] Schoon has no assurance that Steel will continue advancing his costs and is obliged to repay those amounts to the extent he recovers

them from Troy. It cannot be said, then, that Schoon "will not sustain any actual out-of-pocket loss." Therefore, Schoon has articulated sufficient injury to establish his standing.

Second, accepting Troy's arguments regarding standing would inequitably reward Troy. Steel voluntarily undertook to pay Schoon's fees and expenses without obligation. As the court in *Levy* stated, "[t]o succeed on a contribution claim, a party must show concurrent obligations existed to the same entities...."[81] Therefore, Steel lacks standing to bring a claim against Troy. The end result is that, were the court to accept Troy's argument that Schoon also lacks standing, no party could sue Troy. This result would inequitably reward Troy for failing to discharge its advancement obligations. The better approach is to allow Schoon to press his claim.

The court points out one final reason to reject Troy's argument. As this court noted in *DeLucca v. KKAT Management, L.L.C.*,[82] accepting Troy's argument would provide companies a "perverse" incentive;[83] it encourages companies to delay granting advancement in the hope the person owed advancement finds "an affluent aunt, best friend, or other third party to front her defense costs," at which point the advancement right extinguishes.[84] "The incentives for such [delay] are already abundant, as the *Tafeen* line of cases well illustrates, and there is no legal or equita-

---

80. *Id.* at 222 (citation omitted).

81. *Id.* at 220.

82. 2006 WL 224058, at *9 (Del.Ch. Jan. 23, 2006). In *DeLucca*, the plaintiff sought advancement from her former company, KKAT Companies, pursuant to KKAT's bylaws. At the same time, DeLucca was being advanced

fees by her new employer, Kingsland, a company owned by DeLucca. The court awarded advancement to DeLucca for the reasons explained herein.

83. *Id.*

84. *Id.*

ble justification for adding to them . . . ."[85]

For these reasons, Schoon has standing to pursue his advancement claims.

### G. Fees On Fees

■ The plaintiffs also request indemnification for the costs they incurred in enforcing their right to advancement in this action. The applicable provision . in the Troy bylaws states:

> If a claim for indemnification or advancement of expenses under this Article is not paid in full . . . the indemnitee may file suit to recover the unpaid amount of such claim and, if successful in whole or in part, shall be entitled to be paid the expense of prosecuting such claim.[86]

Troy argues that under *Fasciana v. Electronic Data Systems*[87] indemnification in the circumstance must be proportionate to the plaintiffs' success, notwithstanding the terms in the bylaws. According to the plaintiffs, the language in the bylaws providing for indemnification "if successful in whole or in part" distinguishes *Fasciana* and requires full indemnification regardless of their success.

In *Fasciana*, the controlling provision generally established indemnification "to the fullest extent, permitted by Section 145 of the [Delaware General Corporation Law]. . . ."[88] Significantly, based on this language the plaintiff in *Fasciana* made a

substantially similar argument as Schoon and Bohnen do here, that they are entitled to all fees incurred in enforcing the advancement provision, regardless of success. The *Fasciana* court responded:

> Fasciana's rule would encourage attorneys for parties seeking advancement to raise any conceivable argument that can pass Rule 11 muster knowing that any level of ultimate success would warrant a full fees on fees award. Limiting fees on fees awards by imposing a proportionality requirement encourages parties seeking advancement or indemnification to raise only substantial claims and encourages corporations to compromise worthy claims . . . and resist less meritorious claims. . . .[89]

This makes clear that the plaintiffs here are restricted to an award that is proportionate to their success in this action.

This award must adhere to the recognized principle in *Fasciana*, that courts "should only award that amount of fees that is reasonable in relation to the results obtained."[90] Therefore, this court will discount the plaintiffs' costs in prosecuting this action by half to account for the result concerning Bohnen.[91] More specifically, this reflects the elimination of the three invoices under client matter 134.00, and the pro rata reduction of the three invoices under client matter 136.01.[92]

**85.** *Id.* at *9 (further explaining that the practice "would encourage indemnitors to use the leverage of a denial of advancement to deprive indemnitees of appropriate legal advice, putting them under pressure to settle disputes not because of the merits, but because of doubts about whether they could obtain competent defense counsel").

**86.** Def.'s Supp. Tab 6.

**87.** 829 A.2d 178.

**88.** *Id.* at 182.

**89.** *Id.* at 184.

**90.** *Id.* at 185 (emphasis omitted); *see also Levy*, 924 A.2d at 227 ("[T]he provision . . . which purports to . . . indemnify the plaintiffs for fees and expenses regardless of their success on the merits is invalid.").

**91.** *Cf. Fasciana*, 829 A.2d at 184–85.

**92.** *Id.* at 185.

## H. *Attorneys' Fees*

 Finally, Troy argues that it is entitled to attorneys' fees for defending this advancement action because the plaintiffs brought it in "bad faith." "Although there is no single definition of bad faith conduct, courts have found bad faith where parties have unnecessarily prolonged or delayed litigation, falsified records or knowingly asserted frivolous claims."[93] "To award fees under the bad faith exception, the party against whom the fee award is sought must be found to have acted in *subjective* bad faith. A finding of bad faith involves a higher or more stringent standard of proof, *i.e.*, 'clear evidence.' "[94] There is nothing in the record to suggest that the plaintiffs brought this action in bad faith. To the contrary, they were partially successfully in securing advance-ment, making a shifting of attorneys' fees entirely inappropriate.

## V.

For the reasons set forth herein, Count I of the complaint is GRANTED, Count II is DENIED, and Count III is GRANTED in part. This court directs the plaintiffs' counsel to submit an affidavit recording the fees and expenses subject to advancement as directed by the determinations in this opinion. IT IS SO ORDERED.

---

93. *Johnston v. Arbitrium (Cayman Islands) Handels AG*, 720 A.2d 542, 546 (Del.1998).

94. *Arbitrium (Cayman Islands) Handels AG v. Johnston*, 705 A.2d 225, 232 (Del.Ch.1997).