COURT OF CHANCERY
OF THE
STATE OF DELAWARE

JOHN W. NOBLE
VICE CHANCELLOR

417 SOUTH STATE STREET
DOVER, DELAWARE 19901
TELEPHONE: (302) 739-4397
FACSIMILE: (302) 739-6179

December 23, 2015

Brock E. Czeschin, Esquire
Richards, Layton & Finger, P.A.
920 North King Street
Wilmington, DE 19801

Steven L. Caponi, Esquire
Blank Rome LLP
1201 N. Market Street, Suite 800
Wilmington, DE 19801

Re: *Tulum Management USA LLC v. Casten*
C.A. No. 11321-VCN
Date Submitted: November 10, 2015

Dear Counsel:

Plaintiff George Polk ("Polk") is embroiled in multi-fora litigation regarding RED Parent LLC ("RED Parent"),[1] a Delaware limited liability company, of which he is a Manager.[2] By its Operating Agreement, RED Parent agreed to "indemnify each Manager for all costs, losses, liabilities and damages paid or incurred by such Person in connection with the business of [RED Parent] to the fullest extent

---

[1] *See, e.g.*, *RED Parent, LLC v. Polk*, No. 2015 CH 08634 (Cook County Cir. Ct. Ill. filed July 15, 2015) (the "Illinois Action"); *RED Capital Inv. L.P. v. RED Parent, LLC*, C.A. No. 11575-VCN (Del. Ch. filed Oct. 5, 2015).

[2] Defs.' Mot. for Summ. J., Ex. 1 (Amended and Restated Operating Agreement of RED Parent, LLC ("Operating Agreement")) § 5.9 (designating Polk as a "Preferred Interest Manager").

provided or permitted by the [Delaware Limited Liability Company] Act and the other laws of the State of Delaware."[3]  RED Parent also agreed to advance to Managers "as and when they are paid or incurred, all expenses arising in connection with the defense of any matter as to which [RED Parent] is required to indemnify such person."[4]  Polk now seeks advancement for expenses incurred in the Illinois Action.[5]

The parties agree that Polk's demand for advancement is in proper form. The question is whether litigation expenses incurred in the Illinois Action are subject to advancement.  RED Parent argues that Polk was not sued in Illinois

---

[3] *Id.* § 5.4.

[4] *Id.*  The Operating Agreement provides that RED Parent "shall advance."  Thus, the Operating Agreement contemplates mandatory advancement.  *See Schoon v. Troy Corp.*, 948 A.2d 1157, 1169 (Del. Ch. 2008).  Based on the plain language of Section 5.4 of the Operating Agreement, Polk must establish the following in order to obtain advancement: (1) that he was a Manager of RED Parent at the relevant times; (2) that the expenses paid or incurred by him were "in connection with the defense of any matter as to which [RED Parent] is required to indemnify" him; and (3) that those expenses were incurred "in connection with the business of [RED Parent]."

[5] An initial dispute about Polk's right to advancement of pre-litigation expenses is no longer before the Court.  The parties currently debate whether Polk is entitled to advancement.  Polk has requested advancement of expenses incurred after the start of the Illinois Action.  Disputes about the reasonableness of the expenses for which he seeks advancement have yet to come before the Court.

because of his status as a Manager. It also asserts that Polk's conduct that resulted in the filing of that action was not "in connection with the business" of RED Parent. Instead, it contends that he was sued because he was a member of RED Parent's Investment Committee and the Illinois Action involves questions about the work of the Investment Committee. No separate advancement or indemnification provision relates to one's status as a member of the Investment Committee.

In the Illinois Action,[6] RED Parent "seeks a declaratory judgment to resolve an actual controversy between the parties by making a binding determination of their rights under [the Operating Agreement]."[7] RED Parent, through a subsidiary, "develops, owns and operates power projects that harness waste energy and dramatically reduce manufacturers' greenhouse gas emissions and power costs."[8] The Illinois Complaint "concerns the proper valuation method for projects undertaken by RED Parent, and the proper party to engage the accounting firm

---

[6] These allegations are drawn from the First Amended Complaint for Declaratory Judgment (the "Illinois Complaint") filed in the Illinois Action. Defs.' Mot. for Summ. J. Ex. 2.
[7] *Id.* ¶ 1.
[8] *Id.* ¶ 6.

conducting the valuation and provide the relevant information to the accounting firm under the Operating Agreement."[9]  Polk is accused of "seek[ing] to conduct a valuation that is in contravention of the clear terms of the Operating Agreement."[10] RED Parent alleges that it—and not Polk and other defendants in the Illinois Action—"engages the accounting firm that performs the valuation at issue and supplies information for that valuation."[11]  RED Parent focuses on Polk's actions as a member of the Investment Committee.  The valuation efforts involve the work of the Investment Committee.  For the outcome of the Illinois Action, RED Parent proposes that: "any valuation . . . must specifically comply with [certain] terms of . . . the Operating Agreement; . . . any valuation engagement . . . be solely with [RED Parent]; and . . . the cash flow for valuation purposes [be] determined by RED Parent."[12]  Notably, RED Parent seeks no monetary relief from Polk; its objectives are limited to declaratory relief.

---

[9] *Id.* ¶ 2.
[10] *Id.* ¶ 3.
[11] *Id.*
[12] *Id.* Wherefore clause.

The projects to be valued are owned by RED Investment LLC ("RED Investment"), RED Parent's operating subsidiary. The outcome of the valuation effort may be a change in control of RED Investment. Whether there is a change in control of RED Investment, RED Parent argues, has nothing to do with the "business" of RED Parent, and, thus, litigation costs associated with the valuation effort are not subject to advancement or indemnification. In essence, RED Parent seeks to differentiate between the business of RED Parent and the efforts required to determine who controls RED Parent's operating subsidiary.

Under Section 3.8 of the Operating Agreement, if a Trigger Event occurs, control of RED Investment could pass to Polk (and his affiliates). A Trigger Event, defined by Section 1.47 of the Operating Agreement, relates to adverse financial circumstances of RED Parent's various projects, most of which are held by RED Investment. Under certain conditions, any member of the Investment Committee (such as Polk) may request that RED Investment (and other assets of RED Parent) be "revalued on the basis provided for in Exhibit G [of the Operating Agreement] as determined by an independent accounting firm agreed to by all the Investment Committee Members or, if they are unable to agree, drawn by lot from

one firm recommended by each Member."[13]  This is the valuation process that resulted in the Illinois Action where Polk is a defendant because of his role on the Investment Committee.

Although control of RED Investment is the ultimate outcome, one presumes, of the revaluation effort undertaken by the Investment Committee, that revaluation effort is part of the business of RED Parent.  The term—"business of" RED Parent—is not defined, but a function of RED Parent, acting through the Investment Committee, includes the revaluation effort.  It requires participation of Investment Committee members, selection of a valuation professional, and development of information to assist the valuation professional.  Those duties are defined by the Operating Agreement and agreed to by RED Parent's members.

Perhaps RED Parent believes that its "business" should be limited only to those matters that directly generate income.  No definition along these lines can be found in the Operating Agreement, and the functions prescribed by the Operating Agreement provide the best understanding of what RED Parent (or those acting on its behalf) is expected to do.  No principled basis has been offered for somehow

---

[13] Operating Agreement § 1.47(b).

segregating what RED Parent must do from what constitutes the "business of" RED Parent. Thus, Polk has been sued "in connection with the business of [RED Parent]."

RED Parent argues that Polk is not entitled to advancement because he has been sued for his work on the Investment Committee, not in his capacity as a Manager. The Operating Agreement does not limit advancement (or indemnification) to conduct carried out in the capacity of Manager, although one must be a Manager in order to be entitled to advancement. Yet, the Operating Agreement conditions advancement on actions "in connection with the business of [RED Parent]." Polk's status as a defendant in the Illinois Action stems from his efforts regarding the business of RED Parent. In short, the capacity in which a Manager is acting, as long as the underlying conduct is "in connection with the business," does not determine his right to advancement.[14]

Indemnification is available for "all costs, losses, liabilities and damages paid or incurred" by an indemnified person.[15] RED Parent points out that Polk has not suffered losses or damages, in part, because it does not seek to impose

---

[14] *See DeLucca v. KKAT Mgmt., L.L.C.*, 2006 WL 224058 (Del. Ch. Jan. 23, 2006).
[15] Operating Agreement § 5.4.

monetary liability through the Illinois Action. Although the Illinois Complaint does not expressly seek an award of costs, they are routinely part of the litigation process. Such costs, as far as the record demonstrates, have not yet been imposed. However, the legal fees incurred by Polk are fairly characterized as "liabilities." There is no reason to exclude these "liabilities" from the liabilities contemplated by Section 5.4 of the Operating Agreement. Because Polk is burdened with liabilities and will be burdened with costs, he is entitled to indemnification and, thus, advancement of "all expenses arising in connection with the defense of" the Illinois Action.

Accordingly, Polk is entitled to advancement of his defense costs in the Illinois Action because he is a Manager of RED Parent, and RED Parent is required to indemnify him for those costs because they are being incurred for what he did in connection with the business of RED Parent.

Polk also seeks "fees-on-fees"; that is, he seeks to recover the expenses incurred in bringing this action in which he was able to vindicate his right to advancement. Section 5.4 of the Operating Agreement provides advancement "to the fullest extent provided or permitted by the [Limited Liability Company] Act

and the other laws of the State of Delaware." Although the drafters of limited liability company agreements have freedom to tailor such agreements to their specific needs,[16] there is no limitation on the right of a person entitled to advancement to recover his legal fees incurred in seeking advancement. Under established law, Polk is entitled to "fees-on-fees."[17]

For the foregoing reasons, Polk is entitled to advancement by RED Parent of his expenses incurred in defending the Illinois Action and to "fees-on-fees" for pursuing this action.[18]

**IT IS SO ORDERED.**

Very truly yours,

*/s/ John W. Noble*

JWN/cap
cc:     Register in Chancery-K

---

[16] *See* 6 *Del. C.* § 18-108.
[17] *DeLucca*, 2006 WL 224058, at *15; *see also Stifel Fin. Corp. v. Cochran*, 809 A.2d 555, 561 (Del. 2002).
[18] The facts are not in dispute. Whether the process is viewed as summary judgment or trial on a paper record, the outcome is the same. This conclusion resolves Polk's claims under Counts VI and VII of his complaint in this action.