**Jacob CITRIN, Plaintiff,**

v.

**INTERNATIONAL AIRPORT CENTERS LLC and IACEA LLC, Defendants.**

**C.A. No. 2005–N.**

Court of Chancery of Delaware, New Castle County.

Submitted: Aug. 25, 2006.
Decided: Sept. 7, 2006.

**20.** *Id.*

Joel E. Friedlander, Esquire, Bouchard Margules & Friedlander, P.A., Wilmington, Delaware; Ronald L. Marmer, Esquire, C. John Koch, Esquire, James L. Thompson, Esquire, Jenner & Block, LLP, Chicago, Illinois, Attorneys for Plaintiff.

Elizabeth M. McGeever, Esquire, Prickett, Jones & Elliott, P.A., Wilmington, Delaware; William K. Kane, Esquire, Kane & Carbonara, Ltd., Chicago, Illinois, Attorneys for Defendants.

## OPINION

STRINE, Vice Chancellor.

This opinion addresses a discrete legal issue. In this case, the plaintiff Jacob Citrin seeks a judicial order requiring the defendants International Airport Centers, LLC and IACEA LLC (collectively "International Airport") to honor their duty to advance him his legal expenses under the terms of their operating agreements. Suffice it to say that International Airport filed lawsuits against Citrin that clearly implicated his contractual right to advancement.

On October 19, 2004, counsel for Citrin first demanded advancement from International Airport and submitted the required undertaking to repay the amounts advanced if he was determined in the end not to be entitled to indemnification. In that demand, Citrin's counsel asked for confirmation that International Airport would honor its duty of advancement and asked International Airport to "identify ... the person to whom the invoices for Mr. Citrin's legal fees and expenses should be sent." [1]

In response, International Airport's counsel sent the following one sentence

1. Am. Comp. Ex. 5, 6 (demand letters to both defendants).

reply: "Your tender to [International Airport] is rejected."[2] Notably, the reply did not identify where Citrin should send his invoices. Instead, the reply contained a cover page of Lewis Carroll's *Alice in Wonderland* with the lone quote, "Alice was beginning to get very tired of sitting by her sister on the bank and having nothing to do...."[3] Read plainly, the reply was a challenge and an insult that ridiculed the very notion that Citrin had a right to advancement.

Citrin did not immediately file suit seeking advancement. Instead, he sought dismissal of the underlying litigation against him. When the dismissal order he obtained was reversed on appeal and additional litigation was filed against him by International Airport, Citrin filed this suit. Before this suit was filed, Citrin made a demand on International Airport for advancement of his litigation expenses in the new litigation. This second demand, dated March 6, 2006, was once again accompanied by the required undertaking and included a request for International Airport to identify the person to whom invoices should be sent.[4]

A jejune reply again followed the next day. International Airport's one-line response to Citrin stated, "Your tender ... is rejected."[5] No explanation for this decision was provided, and no one was identified as the person to whom Citrin should send his invoices. An attachment page to the letter did contain the following, though: " 'No one is exempt from talking nonsense; the misfortune is to do it solemnly.'—Montaigne."[6]

After this litigation ensued, International Airport argued that the federal district court in one of its underlying actions against Citrin had to decide his advancement claim, and that this court could not do so. I found that statutorily- and contractually-bizarre notion unusual but nonetheless attractive, though admittedly only to that weak side of all humans that finds appealing the notion of avoiding unpleasant duty. After all, if adopted as a rule of law, International Airport's position—that a claim to vindicate the independent contractual right to receive advancements of legal expenses required to defend a lawsuit has to be presented in that lawsuit and cannot be presented in a separate action—suggested that this court would be relieved of its burden to hear advancement actions by corporate officers sued in federal courts, with our federal brethren stepping in to take on that exciting task. I therefore stayed this action to await the federal court's determination of whether International Airport's position was correct. Alas for those federal trial judges eager to become specialists in advancement, the federal district court and the U.S. Court of Appeals for the Seventh Circuit adhered to the more traditional notion that a suit for advancement need not be brought as a counterclaim in the underlying lawsuit for which advancement of legal expenses is sought.[7]

---

**2.** Am. Comp. Ex. 9, 10 (refusal letters from both defendants).

**3.** *Id.*

**4.** Am. Comp. Ex. 7, 8 (demand letters to both defendants).

**5.** Am. Comp. Ex. 11, 12 (rejection letters from both defendants).

**6.** *Id.*

**7.** *Int'l Airport Centers, LLC v. Citrin,* 455 F.3d 749, 751–52 (7th Cir.2006) (affirming the decision of the district court refusing to enjoin Citrin from litigating his advancement claim in Delaware and stating that "Citrin could have asked the district judge to order the advancement of fees.... But requiring [International Airport] to defend the advancement suit in Delaware, the state whose law governs, can hardly be thought a hardship to the company or otherwise inappropriate.")

Once that obstacle to the progression of this case was lifted, Citrin pressed for and obtained a judgment on the pleadings. To be candid, International Airport did not advance a plausible defense to that motion. International Airport's claims against Citrin clearly implicated his right to advancement.

The parties were directed to come up with an implementing order. In that process, Citrin sought a provision requiring the payment of pre-judgment interest on the amount of reasonable fees and expenses he incurred. As to expenses incurred before his initial demand, Citrin argued that pre-judgment interest should run from the date of that demand. As to later expenses, he sought pre-judgment interest running from the date the expenses were paid.

International Airport refused Citrin's request for pre-judgment interest. A flurry of letters to me about the form of order followed. In its letters, International Airport argues that there is an invariable rule of law in our State that precludes this court from granting Citrin pre-judgment interest for any period before he provided International Airport with a specification of the amount of fees and expenses for which he sought advancement. International Airport bases that assertion on the Supreme Court's statement in *Citadel Holding Corp. v. Roven* that in the "contractual scenario" presented in that case, the party seeking advancement was "enti-

tled to interest computed from the date of the demand," [8] and on the footnote explaining that language, which states, "By this, we mean the date when [the party seeking advancement] specified the amount of reimbursement demanded *and* produced his written promise to repay." [9] International Airport also points out that this court, in a recent decision, adhered to *Roven* as the general rule.[10]

Citrin takes issue with International Airport's reading of these cases and its portrayal of them as creating a rigid, invariable rule. I agree with him. While the language in *Roven* is perfectly sensible as a general rule, International Airport's interpretation is overly literal and ignores *Roven's* core meaning.

■■■ A central purpose of pre-judgment interest is to ensure that a plaintiff to whom payment was owed does not suffer injury by the defendant's unjustified delay. By requiring the defendant to pay a fair rate of interest during the period of unjustifiable delay, pre-judgment interest helps make the plaintiff more whole, while depriving the defendant of a windfall.[11] In the contractual setting, pre-judgment interest should therefore not accrue until the point at which the defendant has, without justification, refused to live up to its obligation to make payment.[12] For that reason, *Roven* indicated that pre-judgment interest would run from the date when the party seeking advancement specified the amount of reimbursement sought. Why?

8. 603 A.2d 818, 826 (Del.1992).

9. *Id.* at 826 n. 10.

10. *Tafeen v. Homestore, Inc.*, 2005 WL 789065, at *8 (Del.Ch.2005), *aff'd*, 888 A.2d 204 (Del.2005).

11. *E.g., Finkelstein v. Liberty Digital, Inc.*, 2005 WL 1074364, at *26 (Del.Ch. Apr. 25, 2005) ("The purpose of the pre-judgment interest award is twofold: first, it compensates the petitioner for the loss of the use of his or

her money … and second, it forces the respondent to disgorge any benefit that it has received from employing the petitioners' money in the interim.").

12. In *Roven*, the Supreme Court cited to prior authority tying the obligation to pay pre-judgment interest to the date on which payment was due. 603 A.2d at 826 (citing *Moskowitz v. Mayor & Council of Wilmington*, 391 A.2d 209, 210 (Del.1978)).

One surmises that the Court rationally believed that the responding corporation could not be expected to guess at its obligation and that it should only pay interest from the time it fairly had the opportunity to satisfy the plaintiff's demand for reimbursement. Consequently, the Supreme Court indicated that in the context of the "contractual scenario" it was facing, pre-judgment interest would run from the time the party seeking advancement quantified his demand for reimbursement.[13] That is a perfectly sensible general rule and its core rationale must be honored by this court, but not with a mindless literalism.

██ In the "contractual scenario" presented here, International Airport cannot rely on Citrin's failure to specify the amount of reimbursement he sought as a defense to pre-judgment interest because its own actions prevented Citrin from doing so. Citrin asked International Airport to identify where he should send his invoices. Instead of answering, International Airport chose to flatly reject Citrin's demand and to refuse to tell him to whom he should send his invoices. In fact, instead of providing the information required for Citrin to submit specific invoices, International Airport ridiculed the very notion that Citrin was entitled to any

advancement at all. Given this conduct, International Airport cannot fairly claim that it was deprived of the fair chance to make prompt payment required to avoid a later imposition of pre-judgment interest. Therefore, International Airport's present position lacks both logic and grace.[14]

Consistent with the central rationale of *Roven*, I will grant pre-judgment interest on the expenses Citrin incurred before his first demand on a date beginning ten days after his first demand—the period I estimate it would have taken Citrin to deliver his invoices to the person International Airport could, but chose not to, have identified to receive them—and on all later expenses from the date they were paid.[15] That approach will only compensate Citrin for the period of time when International Airport unjustifiably refused to provide advancement and when by contrary conduct could have avoided any later interest obligation.

Citrin shall submit a conforming order within five days, with notice to International Airport as to form. IT IS SO ORDERED.

13. *Roven*, 603 A.2d at 826 & n. 10.

14. International Airport's argument that Citrin is not entitled to pre-judgment interest because he did not file this suit earlier suffers from the same infirmities because this suit is not time-barred. This second argument rests on the notion that it is proper for parties to refuse to make contractually-required payments until they are sued. One may safely venture that our Republic's economy would function very poorly if this became the general rule of conduct by its citizens, especially by those who are business organizations chartered by law.

15. I hew closely to *Roven* in a respect about which the parties do not feud. *Roven* ran the pre-judgment interest obligation from the

date of demand as the Supreme Court defined it. Arguably, in the advancement context, pre-judgment interest should not run for some reasonable period during which the responding entity could review the invoices and process payments, say thirty days, and not from the very day payment demands are initially made. The reality, however, is that advancement suits do not arise from situations when responding entities are processing requests for advancement in a commercially timely manner. Therefore, *Roven's* slightly more generous approach to starting the pre-judgment interest clock might be seen as providing a healthy incentive for responding entities not to deny advancement in cases when they have clearly promised it.