**STONEWALL INSURANCE COMPANY,**
Defendant/Appellant/Cross–Appellee,

v.

**E.I. DU PONT DE NEMOURS & CO.,**
Plaintiff/Appellee/Cross–
Appellant.

**No. 523, 2009.**

Supreme Court of Delaware.

Submitted: March 10, 2010.
Decided: June 3, 2010.

Dawn C. Doherty and Brian L. Kasprzak, Marks, O'Neill, O'Brien & Courtney, P.C., Wilmington, DE; Virginia A. Seitz (argued) and William M. Sneed, Sidley Austin LLP, Washington, DC, pro hac vice for appellant.

John E. James an Richard L. Horwitz, Potter Anderson & Corroon LLP, Wilmington, DE; John M. Sylvester (argued), Christopher C. French and Kimberley J. Geary, K & L Gates LLP, Pittsburgh, PA, pro hac vice for appellee.

Before STEELE, Chief Justice, HOLLAND and JACOBS, Justices.

STEELE, Chief Justice:

Stonewall Insurance Company and E.I. du Pont de Nemours & Company appeal from a series of summary judgment rulings arising out of disputed insurance policy language affecting the amount DuPont may recover under two excess insurance policies. Stonewall contends that the motion judge erroneously determined the number of occurrences triggering coverage as a matter of law, and applied a non-cumulation clause that inaccurately reduced Stonewall's liability for a subset of claims but not for all. Stonewall further complains that the motion judge awarded prejudgment interest from the wrong date.

In response to Stonewall's contentions, DuPont asserts that the motion judge correctly granted summary judgment but erroneously found the non-cumulation clause to be unambiguous. With the exception of the prejudgment interest award, which we now **REVERSE,** we find the motion judge correctly determined the number of occurrences and properly applied an unambiguous non-cumulation clause. Accordingly, we **AFFIRM** in part and **REVERSE** in part.

### Factual and Procedural Background

E.I. du Pont de Nemours and Company developed an acetal resin product to "bridge the gap between metals and plastics." Between 1983 and 1989, DuPont sold that innovative product for use in polybutylene plumbing systems. After allegations surfaced that inherent defects in the product caused leaks in those systems, with resulting property damage and loss of property, DuPont stopped selling the product to polybutylene manufacturers.

During the relevant time period, DuPont maintained a comprehensive general liability insurance plan that utilized a $50 million self-insurance retention and multiple excess insurance policies to cover losses

exceeding the SIR. There were four separate "towers" of insurance, one for each year, as follows:

> 1983: $50 million SIR, $145 million excess insurance ($165m);
>
> 1984: $50 million SIR, $145 million excess insurance ($195m);
>
> 1985: $50 million SIR, $115 million excess insurance ($165m);
>
> 1986: $50 million SIR, $195 million excess insurance ($245m).

DuPont defended and settled thousands of claims involving the leaking plumbing systems, incurring liabilities exceeding $239 million. In 1999, DuPont filed a complaint against multiple insurance carriers, seeking a declaration of rights and obligations, including a designation of which of the fifty excess insurance policies issued by sixteen different carriers should respond and indemnify DuPont. Ultimately, DuPont settled and recovered approximately $111.7 million from fifteen carriers. As a result, DuPont's sole remaining recourse was to seek indemnification from Stonewall Insurance Company.

In an August 4, 2006 letter, DuPont demanded recovery under Stonewall's 1985 policies that provided a total of $5 million in excess coverage.[1] Stonewall denied coverage, contending that: (1) a "Prior Insurance and Non-cumulation" clause in its policies negated its coverage obligations; and, (2) DuPont's liabilities from the degradation of the acetal resin product constituted multiple occurrences, thereby triggering multiple per-occurrence self-insured retentions.

In a series of summary judgment rulings, the motion judge decided that: (1)

the product liabilities arose out of one single occurrence; (2) the non-cumulation clause clearly and unambiguously directed a multi-policy year loss to the earliest applicable coverage, and reduced Stonewall's coverage obligations to zero for claims that triggered a pre–1985 excess insurance policy; and (3) the non-cumulation clause did not reduce Stonewall's liability for claims arising in 1985. A Final Judgment Order dated August 5, 2009 directed the Prothonotary to enter judgment in favor of DuPont and against Stonewall for $9,790,982, consisting of Stonewall's policy limits of $5 million and prejudgment interest for $4,790,982. This appeal and cross-appeal followed.

## Claims on Appeal

The parties' coverage dispute turns on three issues. The first is whether the product liabilities arose out of a single occurrence so that DuPont only had to contribute one $50 million SIR before seeking coverage from the excess insurers or whether the product liabilities arose out of multiple occurrences, triggering multiple SIRs. The second issue is whether a non-cumulation clause extinguished Stonewall's coverage obligations for all claims or only for those claims that triggered a pre–1985 excess policy. The third issue focused on whether prejudgment interest began accruing from the date of DuPont's complaint or from the date of DuPont's specific letter demand.

## Standard of Review

◼ We review *de novo* the Superior Court's grant or denial of summary judgment.[2]

---

1. Stonewall participated in the 1985 tower and provided $1 million of coverage in the first layer of excess policies and $4 million of coverage in the second layer of excess policies.

2. *Motorola, Inc. v. Amkor Tech.*, 849 A.2d 931, 935 (Del.2004); *Rizzitiello v. McDonald's Corp.*, 868 A.2d 825, 829 (Del.2005); *Lank v. Moyed*, 909 A.2d 106, 108 (Del.2006).

## Discussion

### I. The Number of Occurrences

Stonewall's policies provide that "[t]he term 'Occurrence,' wherever used herein, shall mean an accident or a happening or event or a continuous or repeated exposure to conditions which unexpectedly and unintentionally results in personal injury, property damage or advertising liability during the policy period. All such exposure to substantially the same general conditions existing at or emanating from one premises location shall be deemed one occurrence."

Stonewall contends that the motion judge erroneously invaded the jury's province by resolving the number-of-occurrences question as a matter of law, where several issues of material fact were in dispute. Stonewall identifies two purportedly disputed facts. The first concerns how many separate causes of system failure gave rise to the polybutylene system liability claims. DuPont claims that the liabilities arose from the product's susceptibility to chemical degradation alone (inside-out cracks). Stonewall claims that fault lies with two separate and independent causes—chemical degradation *and* the product's inability to resist mechanical stresses (outside-in cracks).

█ Stonewall's "two independent causes" contention misguidedly attempts to turn the number-of-occurrences analysis into a number-of-conditions question. Whether the failure resulted from the product's susceptibility to chemical degradation from the inside of the pipe or from its inability to withstand mechanical stress from the outside, or both, the *product* itself was the source of the leaking polybu-

tylene systems and the resultant property damage. Indeed, both sides' experts agreed that the product was unsuitable for use in that type of system. Whether it was one condition or two that made the product unsuitable for use in polybutylene systems, is of no legal significance.

The second alleged factual dispute arises from the second sentence of the "occurrence" definition in Stonewall's policies; namely that "[a]ll such exposure to substantially the same general conditions existing at or emanating from one premises location shall be deemed one occurrence." Stonewall queries whether there was only one occurrence, because the relevant "premises location" was a plant in West Virginia where DuPont manufactured the product; or whether each of the 469,000 plus liability claims constituted a separate occurrence because each claim involved an individual building where polybutylene systems failed and damage occurred. Not surprisingly, Stonewall argues that the latter interpretation is the correct one.

In *E.I. du Pont de Nemours & Co. v. Admiral Ins. Co.*,[3] a Superior Court judge analyzed how other jurisdictions treated the number-of-occurrences issue and concluded that "generally, an occurrence is determined by the cause or causes of the resulting injury."[4] Following that conclusion, the court adopted the "commonly accepted [cause] test" and reaffirmed the principle that "where a single event, process or condition results in injuries, it will be deemed a single occurrence even though the injuries may be widespread in both time and place and may affect a multitude of individuals."[5]

---

**3.** 1996 WL 190764 (Del.Super. April 9, 1996).

**4.** *Id.* (citing *Appalachian Ins. Co. v. Liberty Mut. Ins. Co.*, 676 F.2d 56, 61 (3d Cir.1982)).

**5.** *Admiral*, 1996 WL 190764, at *3 (citing *Transp. Ins. Co. v. Lee Way Motor Freight, Inc.*, 487 F.Supp. 1325, 1330 (N.D.Tex.1980)).

Consistent with *Admiral,* the motion judge here correctly identified and applied the cause test to the facts set forth by Stonewall and DuPont. Specifically, the judge held that when determining the number of occurrences in a products liability case, the "[p]roper focus is ... on production and dispersal—not on the location of injury or the specific means by which injury occurred." Therefore, DuPont's production of an unsuitable product triggered only one single occurrence under the policies.

Despite the judge's application of the reasoning in *Admiral* to the set of facts before him, Stonewall (relying on non-Delaware cases) contends that product manufacturers are subject to multiple occurrences findings in the property damage context.[6] We note that the courts in Stonewall's cases reached that result based on their interpretation of the specific policies at issue. Those cases did not apply the cause test, did not involve substantially similar policy language, and did not concern the same type of products liability issue facing DuPont.[7]

Further, if Stonewall's interpretation of the occurrence provision is correct, then each separate claim would constitute its own separate occurrence. As a consequence, DuPont must first expend $50 million per occurrence for a total of approximately $23,450,000,000,000 before being entitled to look to its excess insurers. It is inconceivable to imagine 469,000 occurrences generating almost $24 trillion in damages.[8] Such an interpretation would produce an absurd, unacceptable result that would render meaningless the excess insurance purchased by DuPont and deprive DuPont of the protection for which it paid.

Stonewall's policies are, by definition and by choice, occurrence-based policies, not claims-made policies. The use of the former instead of the latter signifies that neither DuPont nor Stonewall intended to base coverage on individual accidents that gave rise to claims. Rather, they intended to base coverage on the underlying circumstances (or occurrences) that resulted in the claims for damages.[9]

Even if Stonewall's interpretation of the deemer [10] clause was somehow tenable, the motion judge correctly declined to require a jury trial, because Stonewall's argument does not involve any issues of fact. Whether the relevant premises location for purposes of determining the number of occurrences was the plant in West Virginia or each individual building where damage

---

6. *See, e.g., Michigan Chem. Corp. v. Am. Home Assurance Co.,* 728 F.2d 374, 383 (6th Cir. 1984); *Dow Chem. Co. v. Assoc. Indem. Corp.,* 727 F.Supp. 1524, 1531 (E.D.Mich.1989); *Maryland Cas. Co. v. Hanson,* 169 Md.App. 484, 902 A.2d 152, 170 (Ct.Spec.App.2006); *Norfolk & W. R. Co. v. Accident & Cas. Ins. Co.,* 796 F.Supp. 929, 937 (W.D.Va.1992); *CSX Transp., Inc. v. Cont'l Ins. Co.,* 343 Md. 216, 680 A.2d 1082, 1098 (1996).

7. The authority cited by Stonewall involves cases applying the "effects" test, environmental liabilities disputes (asbestos and lead paint), products liability cases involving marketing defects (i.e. improper labeling of products), and nuisance-noise cases involving loss of hearing.

8. *See Owens–Illinois, Inc. v. Aetna Cas. & Sur. Co.,* 597 F.Supp. 1515, 1527 (D.D.C.1984).

9. *See Champion Int'l Corp. v. Cont'l Casualty Co.,* 546 F.2d 502, 505–06 (2d Cir.1976), *cert. denied,* 434 U.S. 819, 98 S.Ct. 59, 54 L.Ed.2d 75 (1977).

10. 3 Alan S. Rutkin et al., NEW APPLEMAN INSURANCE LAW PRACTICE GUIDE 39.15(4) (2009) ("[a] 'deemer' clause [ ] is a mechanism to determine which single policy responds where an occurrence potentially triggers more than one policy.... [t]he intent of these clauses is to limit the insurer's liability where loss spreads over more than one policy period....").

occurred, is not a factual issue. Rather, it involves the interpretation of policy language that is generally a question of law for the court and not a factual dispute for a jury to decide.[11]

Accordingly, we hold that the motion judge correctly concluded that only a single "occurrence" triggered the Stonewall policies.

## II. Non–Cumulation Clause & the Reduction of Liability

The non-cumulation clause contained in Stonewall's policies reads as follows:

> It is agreed that if any loss covered hereunder is also covered in whole or in part under any other excess policy issued to the Assured prior to the inception date hereof the limit of liability hereon as stated in Items 5 and 6 of the Declarations shall be reduced by any amounts due to the Assured on account of such loss under such prior insurance.

Stonewall contends that although the motion judge correctly determined that the non-cumulation clause unambiguously operated to reduce Stonewall's liability, he erroneously allocated the loss such that Stonewall's limits were reduced to zero for only part of the loss. Stonewall claims that because prior insurance (the 1983 and 1984 policies) covered most of that loss, DuPont cannot recover any amount under Stonewall's policies.

Responding to Stonewall's contentions, DuPont asserted that non-cumulation provisions operate only to prevent an insured from obtaining a double recovery, which will not take place here. DuPont emphasizes that it seeks only to obtain the highest per-occurrence limits of coverage in any one year, not a double recovery. DuPont further contends that even if the non-cumulation clause applies, it is ambiguous, as several words and phrases ("covered," "due," "should be reduced," and "reduction of limits") allow for multiple reasonable interpretations. Therefore, DuPont contends, the ambiguous non-cumulation clause must be construed against Stonewall—the drafter.

We conclude that the motion judge correctly applied the unambiguous non-cumulation clause and reduced Stonewall's liability properly. In a previous opinion, the judge adopted the all-sums approach,[12] also known as joint and several liability. Under that approach, each insurer whose policy has expired, is wholly liable for damages that exceed the SIR and that occurred over multiple years (up to the limits of each individual policy).[13] For example, where a system is installed in 1983 and removed in 1985, then all insurers from 1983—1985 are jointly and severally liable for the covered damage that occurred over the three year time period.[14]

Under the all sums approach, DuPont may choose a single tower of coverage, applicable to a single year, from which to seek indemnity and defense costs.[15] After selecting a tower, coverage then proceeds up the tower from the first layer of coverage until full indemnity or complete ex-

---

11. See, e.g., Hercules Inc. v. AMEC Va., 1999 WL 167829, at *2 (Del.Super.Feb. 17, 1999); Deakyne v. Selective Ins. Co. of Am., 728 A.2d 569, 572 (Del.Super.1997); A–E–Newark Assoc. v. CNA Ins. Cos., 2001 WL 1198930, at *2 (Del.Super.Oct. 2, 2001).

12. On appeal, the parties do not contest the allocation method chosen; rather, Stonewall contests the application of the method.

13. E.I. du Pont de Nemours & Co. v. Allstate Ins. Co., 2006 WL 2338045, at *7 (Del.Super.July 31, 2006).

14. See 3 Alan S. Rutkin et al., NEW APPLEMAN INSURANCE LAW PRACTICE GUIDE 39.12 (2009).

15. Id.

haustion of the policy limits occurs.[16] In turn, the selected insurers may then seek contribution against other carriers from other towers whose policies were also triggered by the product liability claims.

The non-cumulation clause does not create an ambiguity which alters this process. Despite DuPont's effort to assign multiple interpretations to several terms in the clause, we have noted that non-cumulation clauses "reduce[ ] recovery under an excess policy to the extent that the insured already recovered under 'a policy issued prior to the inception date' of that excess policy." [17] Moreover, other courts applying clauses nearly identical to Stonewall's have determined that the clause clearly reduces policy limits "by the total amounts paid, or due, to the insured from the prior excess insurers." [18]

■ Indeed, interpreting the non-cumulation clause to limit how much DuPont may seek from the selected tower of insurance by subtracting any amounts received by or payable to DuPont from prior excess insurers, is the only proper interpretation. Here, the controlling rule of construction is that "[a] single clause or paragraph of a contract cannot be read in isolation, but must be read in context." [19] Under this framework, reading "covered, due, should be reduced, and reduction of limits" as ambiguous and in isolation would dishonor

the spirit of the clause and improperly allow DuPont to obtain a double recovery by negating settlements already received from the 1983 and 1984 insurers.

Relying primarily on *California Insurance Co. v. Stimson Lumber Co.*[20] and *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*,[21] Stonewall asserts that the term "loss" means the entire loss at issue and not subsets of it. Stonewall further contends that the loss was large enough to trigger the $50 million SIR *and* reach into the excess policies in 1983 and 1984; therefore, those policies covered the loss *in part* and reduces Stonewall's liability to zero for the entire loss.

First, the motion judge correctly distinguished the two cases on which Stonewall relies. Those cases involve the application of a *pro rata* method,[22] not an all sums method. Moreover, he aptly observed that the loss produced both multi-year damage and single-year damage. Although "loss" may be read broadly to include the entire loss and not subsets thereof, any such reading counterfactually assumes that the loss consists entirely of *indivisible* damage over multiple policy periods—which is not the case here. That reading contradicts both parties' stated ability to segregate a part of the target loss and confine it to a single year. It logically follows that where the parties can confine damage to a single-

---

16. *Id.*

17. *Hercules, Inc. v. AIU Ins. Co.*, 784 A.2d 481, 493–94 (Del.2001).

18. *See Greene, Tweed & Co., Inc. v. Hartford Acc. & Indem. Co.*, 2006 WL 1050110 (E.D.Pa. April 21, 2006); *Westinghouse Elec. Corp. v. Am. Home Assurance Co.*, 2004 WL 1878764, at * 19 (N.J.Super. July 8, 2004); *Viking Pump, Inc. v. Century Indem. Co.*, 2009 WL 3297559, at *30 (Del.Ch. Oct. 14, 2009).

19. *Cheseroni v. Nationwide Mut. Ins. Co.*, 402 A.2d 1215, 1217 (Del.Super.1979), *aff'd*, 410

A.2d 1015 (Del.1980); *Hudson v. D & V. Mason Contractors, Inc.*, 252 A.2d 166 (Del.Super.1969).

20. 2004 WL 1173185 (D.Or. May 26, 2004).

21. 283 Ill.App.3d 630, 219 Ill.Dec. 62, 670 N.E.2d 740 (1996).

22. 3 Alan S. Rutkin et al., New Appleman Insurance Law Practice Guide 39.13 (2009) (Unlike the all sums method where one insurer is wholly liable for the entire loss, a pro rata approach spreads the loss and assigns liability on a proportionate basis.).

year, then only the insurers participating in a CGL tower covering *that year* are responsible for responding to that damage.

Secondly, Stonewall's interpretation fails to consider the "in whole or in part" language in the non-cumulation clause. Amounts payable to DuPont that cover the *entire* loss extinguishes Stonewall's liability. But, where the amounts payable by prior excess insurers only cover *part* of the loss, then Stonewall's coverage applies to the remaining portion. Here, DuPont selected the insurers in the 1985 CGL tower from which to seek indemnity for its defense costs. Both DuPont and Stonewall agree that all insurers are jointly and severally liable for at least $74.8 million in defense costs. Stonewall goes further and lists an additional $18.5 million in liability claims that are confined to 1985 (i.e. damage from systems that were installed and removed in 1985).[23] Thus, Stonewall's figures establish that there are at least $93.3 million in damages for which Stonewall is wholly liable.

There also appears to be no genuine factual dispute that DuPont recovered over $20 million in settlements from its 1983 and 1984 insurers.[24] Because the $20 million represents "any amounts due to the Assured on account of such loss under such prior insurance," the $93.3 million figure is reduced to $73.3 million. Applying DuPont's SIR to the reduced figure, $23.3 million remains.[25] Stonewall policies provide $1 million of the $5 million first layer of excess coverage and $4 million of the $15 million second layer of excess coverage. As a participant in the first two layers of excess insurance, Stonewall must *first* respond to losses that exceed DuPont's $50 million SIR by $20 million. Because the $23.3 million figure falls almost squarely within the first two layers of coverage, the judge correctly determined that the $23.3 million loss reaches Stonewall's excess policies.

We, therefore, uphold the motion judge's interpretation and application of the non-cumulation clause.

### III. Amount of Prejudgment Interest

#### Standard of Review

The final issue concerns the calculation of prejudgment interest. We determine the due date of a prejudgment interest award by plenary review.[26]

#### Discussion

▮ The parties do not dispute DuPont's entitlement to prejudgment interest; rather, Stonewall questions on what

---

**23.** DuPont and Stonewall dispute whether the remaining liabilities total $137.5 million or $127.3 million. The $74.8 million is included in both parties' figures; therefore, we used this figure to determine the extent of Stonewall's liability. We make no findings regarding the accuracy of these figures.

**24.** *E.I. du Pont de Nemours & Co. v. Stonewall Ins. Co., et al.*, 2008 WL 7020668, at *5 (Del.Super.Aug. 14, 2008) (noting that in a June 2, 2008 Order the court accepted as fact, without objection from DuPont, that the amounts recovered by DuPont in settlements with its 1983 and 1984 insurers exceeded $20 million).

**25.** Although the judge used different numbers, the results are the same. The amount of

claims reaches Stonewall's excess policies. Furthermore, we agree with the motion judge that the plain language of the non-cumulation clause prevents its application to SIRs. The non-cumulation clause refers to *excess insurance*. Title 18, section 102(d) of the Delaware Code defines insurance as a "contract whereby one undertakes to pay or indemnify another." If insurance mandates an undertaking by one to pay or indemnify another, a mechanism where an entity indemnifies itself (i.e. SIR) does not appear to satisfy that requirement.

**26.** *Citadel Holding Corp. v. Roven*, 603 A.2d 818, 826 (Del.1992).

date interest should have begun to accrue. As a general rule, interest accumulates from the date payment was due to a party.[27] For insurance claims, interest accumulates from the date a party actually demands payment.[28] Where it is difficult to determine to a reasonable degree of certainty when an insured demanded payment, we often rely on the date that the insured filed the complaint. Here, the motion judge awarded prejudgment interest from the date DuPont filed its complaint, December 30, 1999.

■■■■ We disagree with the chosen accrual date. Prejudgment interest is an extraordinary award that applies when a party unjustifiably refuses to live up to its obligation after payment is due.[29] Although DuPont's initial 1999 complaint may in the abstract be construed as a demand for payment, DuPont amended that complaint to make demand against the 1983 insurers. After settling with the 1983 insurers, DuPont then changed its strategy and made claims against the 1985 insurers, including Stonewall, in an August 4, 2006 demand letter. Therefore, Stonewall could not have unjustifiably refused to pay until DuPont demanded payment on August 4, 2006. Accordingly, the motion judge erred by awarding prejudgment interest from December 30, 1999.

### Conclusion

For the foregoing reasons, we **AFFIRM** the Superior Court's judgment in part, **REVERSE** the prejudgment interest award and **REMAND** for a modification of the award of prejudgment interest.

---

27. *Hercules,* 784 A.2d at 507–08.

28. *Id.*

29. *Citrin v. Int'l Airport Centers LLC,* 922 A.2d 1164, 1167 (Del.Ch.2006).